May it please the Court, I'm Jonathan Bleeds, representing the appellants. I'd like to reserve five minutes for rebuttal. As you know, the briefs cover many issues, but today I'd like to summarize two key points concerning state data collection regulations. Those points are that both congressional action and congressional inaction demonstrate that Congress had no intent whatsoever to preempt in the area of state data collection. First, with regard to congressional inaction in the preemption provisions themselves, there's a one-to-one relationship between the three substantive elements of the Federal Appliance Program, that is, testing, labeling, and efficiency standards, on the one hand, and on the other hand, preemption in Section 6297. That is, in Section 6293, Congress established a Federal testing program, and in preempting state regulations in 6297a1a, it expressly referred back to Section 6293. Also, Congress established a Federal labeling and other consumer disclosure program in Section 6294. And again, in the preemption section, this time 6297a1b, it expressly referred back to the State to the Federal labeling program. Finally, Congress established a program of Federal efficiency standards in Section 6295, and once again, in preempting state regulations, it referred expressly back to that to that section. So on the one hand, we have Sections 6293, 6294, and 6295, Federal testing, Federal labeling, Federal efficiency standards. And in the preemption section, we have three express references back to the testing, labeling, and efficiency standards program. Congress also established that there was to be manufacturer submittal of data to the Federal government in Section 6296. But when we look at the preemption section, Section 6297, we find that in contrast to the references to testing, labeling, and efficiency standards, there's no reference back to Federal data collection. This strongly suggests that Congress did not have data collection in mind when it preempted state regulations in Section 6297. In effect, this is a case where the preemptive dog did not bark. Now, Congress's silence or inaction was especially telling in 1992. Three years prior to that, in a rulemaking proceeding, the Federal Trade Commission, in response to a question from the State of New York, had said that Section 6297a does not preempt state data collection regulations. It was clear and explicit on this point. Three years later, in enacting EPACT, Congress made a minor amendment to Section 6297a, the very section that just three years before the FTC had said does not preempt state data collection regulations. But Congress did not lift a finger to do anything to Section 6297a that would reverse or change the FTC's opinion. We submit that the only reasonable interpretation of Congress's inaction is that Congress agreed with the FTC. Now I'd like to turn to congressional action. And the specific action that I want to highlight today is Congress's encouragement in Section 6297f of flexible State building codes that allow builders to trade off the efficiencies of various parts of a building as long as an overall energy goal or budget is met. And California has such a code, and has for more than 20 years. For example, if a builder wants to construct a home on the property with a large picture window to give an expansive view of the San Francisco Bay, she'll have to take into account the fact that windows let in more heat and cold than does an equivalent wall. So she's going to have to trade off the inefficiency of the large window against greater efficiency somewhere else in the building. For example, she might specify on the building plans an extra-efficient furnace, an extra-efficient water heater, so that those extra efficiencies can be traded off against the inefficiency of the window. Now, where is she going to find out about these products? She's going to go to the Energy Commission's Appliance Database, which contains information on the names, the model numbers, the sizes, and the efficiencies of every single furnace and water heater that's available in the State of California. Similarly, when she takes her plans to the building department to get a permit, the building official is also going to be able to refer to the database to confirm that the efficiencies specified on the plans are the actual efficiencies of the appliances. We submitted declarations in the trial court that show that the existence of the commission's database is vital to the success of the flexible building code, the exact kind of code that Congress encouraged in Section 6297F. We also submitted declarations from representatives of utilities and State energy offices from across the country that the database is also vital for a host of other efficiency programs. We submit that it just doesn't make sense to believe that on the one hand, Congress was encouraging energy efficiency and, on the other hand, intended to deprive States of the authority to gather the information needed to make those programs work. Yet the trial court took the most expansive view possible of what 6297A preempts. The trial court's interpretation really, in our view, it was its legislation, is that the States are not going to be from acquiring manufacturers to tell even the name of the person manufacturing the product or the model number of the product. We can't even get that information. We suggest that there's certainly no clear and manifest congressional intent to carry the words of 6297A that far. And it's for these reasons that I've discussed today, and for everything else that we went over in our briefs, that the Energy Commission and the amici, who again represent State utility and energy offices from across the country, urge reversal. Thank you, counsel. You can save your time for rebuttal if you want. Thank you. Thank you. Good morning, Your Honors. John Hodges for the Four Appellee Trade Associations with the Stephen Yurek General Counsel of the Air Conditioning Refrigeration Institute, and may it please the Court. As a consequence of the California Energy Commission's mandatory information disclosure program, a Federally covered product that is fully compliant with Federal requirements can be offered to consumers everywhere in the United States except California, unless and until the CEC's burdensome regulations are complied with. The district court rejected this. It took a look at the intent of Congress, taking into account the Federal legislative history, the language of the preemption provision, and the surrounding legislative circumstances, and it determined that the particular information disclosure provisions at issue are preempted and it ruled against them, and we request that that decision be affirmed. The district court recognized that the Energy Policy and Conservation Act had established a national energy policy. We all remember back to 1975 with the oil embargo going on there. This was a national problem, and the statute provides for a national energy policy of which preemption, broad preemption, is a central tenet. Federally covered products are allowed to be marketed throughout the United States, and where Congress wanted exceptions for these very narrow and explicit exceptions. Well, we can toss a – I mean, each side makes a forceful argument on what congressional policy ought to be in this area. I suppose we're just down to really what disclosure of information means in the context of the statute, right? Yes. That's correct, Your Honor. And in that regard, our – first of all, the district court took a look at the circumstances and indicated that the concern of Congress went certainly beyond labeling and certainly went beyond standards. The CEC takes the position that the term disclosure of information does not mean disclosure of information, but rather means, quote, disclosure of information at point of sale or use. Your Honors, a rose is a rose. And in our view, a disclosure of information is a disclosure of information no matter what form it takes. The Court carefully reviewed the circumstances and indicated that it went far beyond disclosures on labels and included information on reports. The – let's just take a look at the provision itself, 6297a1. Congress used very, very broad, preemptive language. It used the term any State regulation in any manner and a very broad concept of, quote, with respect to. In addition, the CEC says that the term disclosure of information that appears in 6297a1 has to be qualified by the exception that appears at 16 – 1697a1b, which is the term except for information required under section 6294. But this definition in the exception does not qualify the general prohibition that appears in a1. Moving modifiers around from an exception up into the – into a general rule does extraordinary violence to – to a general prohibition. And this can be seen in, you know, in a number of different ways, not only here but in everyday life, and I could provide examples of that. The agency also attempts to paint a weak picture of preemption as it appeared in 1975 with EPCA when it was passed. But that's not the case. When the – it was a preemption provision against disclosure, and the conference report stated that preemption was provided against State or local disclosure and product standard law and regulation. That certainly shows an intent for preemption that goes beyond standards and labeling. Now, let me briefly turn to the issue of the Federal Trade Commission remark that appears in the – in the preamble of the ballast rule that took place in 1989. Neither the Federal Trade Commission nor the Department of Energy are here requesting that that remark in that preamble be – be deferred to. And it's contradicted both by the statute and the regulations, both of the FTC and the Department of Energy themselves. The DOE and the FTC regulations provide that State regulations that require disclosure for any covered product of information with respect to energy consumption other than the information required to be disclosed in accordance with this part are superseded. Again, disclosure is disclosure. It's a very broad, general prohibition. With respect to the building code, this provision in EPCA only relates, and it's very narrow, relates to certain provisions that are, quote, contained in a building code. These provisions are not contained in a building code. They are contained in Title 20 of the California regulations, and the building code is in Title – in Title 24. And building inspectors have – the issue of building inspectors, again, is a building code justification which simply doesn't – doesn't  is weak because of the fact that the waiver provision only applies to standards. But when you take a look at the waiver provision, it's actually quite broad. It says that waivers are provided for, for not only standards, but, quote, other requirements with respect to energy efficiency or energy use of federally covered appliances. So if anything, we think that proves the strength of the – the strength of the preemption. Your Honors, where – where are we basically left if the district court's decision is upheld? We will have a situation in which appliances will be able to be purchased in California like they will anywhere else in the United States. We have a beneficial and broad Federal program that includes standards, that includes test procedures, that includes information disclosure, and includes enforcement. Let's get right down to specifics. Exactly what does – would your client, the appliance company, have to disclose if – if we were to reverse? Well, the – there are – if you take a look at – it is Table Q in 1606 of the CEC's regulations, there are 249 items of information that are requested. Now, again, that's spread over a number of different – different products, but manufacturers have many, many products. So I would expect there would be hundreds and hundreds of pieces of information that would be – that would be required. We're talking about cooling capacity, heating capacity, that sort of thing? Yes. I mean, the stuff that you would include, I would expect in the manufacturer's specification of any products. Some will, but some of them, yes. Some of them, no. Well, give an example of information that would require you to disclose something other than what would be in the usual manufacturer's specifications that would be available to any consumer. There are trade-secret aspects, for example, with respect to the guts of a central air conditioner, for example. They want to know, for example, if a – if a motor within the central air conditioner is a premium or non-premium item. Therefore, you would have to actually get into the guts of the product itself, not simply the specifications as to how it is performing, but actually going inside the product itself. These are – a lot of these things are trade secrets. And the – I guess I'm not quite on following that argument. I mean, it would certainly be subject to a patent, right? I'm sorry? It would be subject to a patent, which would be public. What – Well, Your Honor, I'm interested that there are 131 different items that they would require in Table Q that are simply not part of the – that are not even part of the Federal – Federal test procedures. And, Your Honors, this goes actually not only to the items of information, but we're dealing also with the procedures. We can't market our product in California until we – until they get all this information, review it, consider it to be – to be acceptable, and post it on their – its website. It goes far beyond anything. And if California can do this, then anybody, any State, local jurisdiction could – could do what they want. It has to be submitted in the format that the CEC wants. And, you know, with due respect to the civil servants who are working at the California Energy Commission, we have to deal with them. They want to have things done in their way. We have to round information in a fashion that is not provided for under the Federal – Federal test procedure. We have to do our marking pursuant to a – an out-of-date Federal Trade Commission code of Federal regulations. They want all the marking to be done by the 2001 version of the – of the regulations, which is totally out-of-date. And these kinds of things would multiply with every single State requiring us to jump through a variety of different hoops and do – do things that they want. Every single State, every single local jurisdiction could – could potentially do this. This would be a nightmare. It goes precisely against the national market that was a central tenant of the – of the statute. The market, according to the Federal requirements, and there would be specific narrow areas of – of State interest. For example, there's a specific preservation of the California water source heat pump requirements. Again, when – when Congress wanted to preserve something, it would go pick it out. It would say, okay, this particular faucet provision in Rhode Island is okay. The water source heat – heat pump provision in California is okay. So they knew how to grandfather, and they did it very, very narrowly. And they certainly did not do that with respect to – with respect to this situation. You know, this information is now even available on the Federal Trade Commission's website. It's available – the district court found that information is available from a number of different sources, trade associations, manufacturers, et cetera. If you go into the – go into the FTC website, you can pull up these – a variety of different pieces of information. But, again, the – the fact that manufacturers may have some information that the State wants to get, it's simply because it happens to like its – its database. Why can't it compete along with other databases, the manufacturers' databases, the trade association database, the FTC? Why does it have to hold our products hostage and not allow them to be used in the same way? Why can't it be marketed in California until the State gets – gets its hands on it? We don't believe that that is – that's reasonable, and we believe that it will simply open the floodgates to – to any jurisdiction that wants to, to put in a variety of different requirements that are – that are not – we believe are not – not warranted, and we believe are clearly preempted by the – by the statute. Roberts. Go ahead. I don't mean to deter you from your other arguments. With respect to the matter of – of marking, the – we've dealt with that. Again, I – let me actually go back to indicate that the – the regulations certainly do require something that is other than provided for under the – under the Federal requirements. The Federal requirements simply do not have a licensing requirement. It is a procedural hoop that is nowhere provided for in the – in the Federal rules under the statute or the regulations, and as a result of that, we believe that the distinction that the other side attempts to draw is – is unwarranted between procedural and substantive requirements. Furthermore, with respect to the CEC's argument that there was some kind of adoption in 1992, what would the Congress be adopting? If – if anything, the – I've already indicated that the regulations of both the Federal Trade Commission and the Department of Energy go precisely against what the – what the drafter put in the remark in the – in the preamble. So if anything, our view is that it would require an incredible contradiction, really, for Congress to say we are going to reject what is clear in the FTC and DOE regulations, and we're going to adopt a – a remark that was really quite obscure, that was not well thought out, and that simply goes against the – goes against both the statute and the statute and the regulations themselves. With respect to – to marking, let me turn briefly to the issue of so-called EPACT marking, the Energy Policy and Conservation – excuse me, the Energy Policy Act of 1992, which were the amendments relating to the – certain industrial products. The CEC is wrong to state that it can adopt marking regulations if the agency, the Department of Energy, had not done so. The marking requirements are – marking prohibition and preemption applies, quote, at any time, and is not dependent on the existence of Department of Energy regulations. The district court properly indicated that there was an intent for uniformity. The Department of Energy really has been quite active in – in this area. Not only has it put in marking for motors, which the CEC had not acknowledged initially in its opening brief, but has now. At the CEC, we also have a situation in which the Department of Energy has just recently issued a variety of different rulemakings in relation to industrial products, such as that will – central air conditioning equipment at the industrial level that will lead potentially towards the adoption of, or at least consideration of, labeling. Thank you, Your Honor. I appreciate it. Roberts, please. I appreciate your hearing. May it please the Court, counsel has made a number of statements that need to be clarified. Mr. Hodges led off with what is the – perhaps the central theme of the Trade Association's case, which is that Congress has established a comprehensive national energy policy. That's true. In the various statutes that were enacted in 75, 78, 87, and 92, Congress has discussed coal production, it's discussed strategic petroleum reserve, it's discussed the conservation potential in off-road vehicles, and a host of other subjects. But the fact that there is a comprehensive energy policy says nothing about the scope of preemption of State regulations that Congress intended. In fact, when you look at the Federal Appliance Statute's legislative history, we find that Congress expressly mentioned labeling, testing, and efficiency standards as the type of State regulations that it was preempting. Can I ask you a question about disclosure? You've argued it's only disclosure at the point of sale, but if the State gets all this information and puts it on a public database, isn't the State requiring disclosure that goes immediately to something that all the public can get? Yes, Your Honor, but I want to make two – two points here. First is that when you – when you look at the structure of the – of 6294, which is the Federal labeling statute, and despite what counsel said, when you look at the FTC regulations, especially the scope section, 16 CFR 305.1, it's – it's clear that that is directed only towards labels, information – other information that is provided at the point of sale. That – that's what the – that's what the regulations say at the point of sale, or shipped with the – the product. It simply does not extend to other means by which this information might be – Well, as it was argued in the previous case, you've got modern technology where anybody can tap into the database, and it seems absurd to say that this is not going to the consumer. Any informed consumer will do it. We're – we're not – we're not saying that consumers don't have – have access to it. No, but the effect is to – to make this immediately available to any informed consumer. It is – it is certainly a – And if you – would you give that up as a condition to not be preempted? I – I don't think that it would do us any good, Your Honor, if we had to get the information and then – and then keep it secret. All right. But then – then I think you're saying you've got a system that discloses the information to consumers. Yes, Your Honor. And whether it's point of sale or – it's before the consumer buys. We – we have had such a – such a system, as Mr. Martin's and Ms. Hall's declarations cover, since 1976. Well, that doesn't make any difference. The question is, what is – what's true now? Well, I think –  I think it does matter, Your Honor. All right. Because – because the – the FTC was – was aware of California's data collection when it issued its interpretation in – in 1980 – 1989, and we had certainly been making the information available to the public to inform consumers for approximately 13 years before then. Still, the FTC said very clearly that 62978 does not preempt state data collection. In – in addition, the Philip Morris v. Harshberger test, which involves preemption of state restrictions on tobacco advertising, said that – that – that preemption does not about the very product at issue, even if it will be made publicly available, such as to – to informed consumers. And I think that – that the legislative history is – and not only did Congress use the – expressly use the words testing, labeling, and efficiency standards, but the types of burdens that Congress talks about in the legislative history are the burdens – design changes, modifications in production, or in marketing. And state data collection doesn't affect any of these areas. Well, it doesn't in a sense, though, and it's what Judge Nunes talked about. The point of – of your collection, really, is – is for public disclosure, right? I mean, that's one of the major purposes, is to be able to create this website that will inform your consumers, and – right? Yes. That is – that is one of – of the major purposes, as the declaration showed. There are – there are others as well. Right. Yes. But that would seem to be right within the parameters of what the statute's talking about, when you're talking about disclosure of information, which you would like to say is disclosure of information to consumers at the point of sale and add those words in there. And I understand your structural argument, historical argument, but when you're talking about – and if you're – when you're just limiting your argument, your – your contention to – to data collection, but when you're talking about what the – for which the point of the data collection, it seems to get back into those areas in which the statute was addressing, which is information directed to the consumer at – at the point of sale. Because, as Judge Nunes says, the website – I mean, if – if this is going to be sold over the Internet, your database is going to be a click – a link on the – on the website for the information. And – and what the trial court said is – is that the State cannot provide that information to its – to its citizens. I think that that – that is when – when even just looking at the words disclosure of information out of context, out of the context of the statute, out of the context of the legislative history, and out of the context of the FTC opinion, even just looking at the words on their face, I think it's unreasonable to say that there is a clear and manifest congressional intent to preempt States from getting information about the products that are sold in the State. Remember, the – the trial court said the State of California does not have the regulatory authority to require somebody who's selling a product in this State to tell us the model number. Well, it seems surprising, unless you think of it as a national policy. It wants to be uniform. And I have another question I'd like to pursue with you. You make something of a case where the State – where the Federal – there are no Federal regulations, and so you say the State is not doing something other than Federal law. But if the Federal law is not requiring anything, you are doing something other if you require it. Your Honor, Congress was concerned about inconsistent – Well, could you respond just to that point? We don't think that Congress intended to mean other than nothing. We think that – Well, why do you think that? Well, for – for several reasons. First, because the legislative history indicates that Congress was concerned about inconsistent State regulations, State regulations that were inconsistent with what's going on at the Federal level or different States having – having different requirements. But it seems quite inconsistent if the State says if the Federal people want nothing and you say, well, you've got to do all this and the other – it could be very inconsistent around the country. It's not that the Federal government wants nothing. It's that the Federal government hasn't yet gotten around to doing something. We cited several cases, including Baltimore and Ohio and – and Hawkins, in which Congress had set up a regulatory program, as it is done here with – with labeling. But the agency had regulated in certain parts of the broader area. And those cases stand for the proposition that even though there's general preemption, that the States are not preempted from regulating in the – in the leftover areas. And that's what's – Well, let me take a hypothetical. Let's say the FTC, relying on what it believes to be its authority under this section, establishes a national labeled database and requiring the manufacturer's specifications and so forth and put it in a database that covers some but not all of the material that's in your database. Why wouldn't that be a Federal program that would be inconsistent with yours? That would depend on – well, first of all, I'm – I'm not sure if – if in creating this national database, which, believe me, we would very much like to have, would be an expression by the FTC that it intended now to preempt State data collection regulations, that it was – it was changing its mind since – Well, we don't have the FTC here, which would have been helpful, so we don't know what's in the FTC's mind except through – through your – all of your efforts. So what's your position on that? Would that be – would it impact the other-than clause for preemption or not? No, Your Honor, because that would not involve disclosure of – of information as we believe Congress intended the term. We – we also believe that in – in – as – as we've pointed out, we're – we – we have three pegs on – on which we're hanging our hat. What we're asking for is not disclosure of information at all. In about half the cases of – of the data, we're not asking for a measure of energy consumption. And where we are asking for a measure of – of energy consumption to be submitted in – in – in data, all of that information is provided through the Federal test method. Since the Federal agencies require the manufacturers to keep that information and to provide it to them on – on request, we believe that it's certainly not other than for us to get that information. So if – the FTC's database would be presumably limited to items that are produced during the Federal test methods. So if manufacturers are submitting that to the FTC, we – it would not be other than for them to send it to us. In other words, other than means information – the – the statute says in 6297a1b, other than information required under section 6294. It doesn't say other than means to send it to a different address. I – I want to get back to what counsel was – was saying about Congress's alleged intent to create a – a national market in which federally covered products can be sold anywhere without any State restrictions. But what – what that does is that – is that reads section – all the limitations in section 6297a1 completely out of existence. It says, well, it doesn't matter if the State is or is not calling for a disclosure of information. It doesn't matter if the State is doing something other than what's being done under the – under the Federal program. His argument is that the States can literally do nothing, and that's – it's inconsistent with the express words of the statute. It's inconsistent with the preservation of statutory and common-law remedies in section 6305. It's inconsistent with the Ingersoll, Rand, and Gould cases, which say even the existence of an extensive Federal enforcement program does not preempt the States from doing their – their own enforcement. Again, I'd – I'd point out that manufacturers have been submitting information to the Energy Commission since – since 1976 with no indication of any significant burden. As their declarations indicate, we've asked them to describe with particularity any burdens of – of data collection. They have not done so. Their declarations in – in this litigation conflated alleged burdens from data collection with burdens from other aspects of the California regulations that actually didn't even exist at all. Section 6297F, the Building Standards Provision. We are not saying that our appliance data collection and marking regulations are contained in a State building code. That is not a basis for finding a lack of preemption. What we are saying is that the existence of section 6297F on flexible State building codes, as well as 6297E on State procurement standards, the existence of those is inconsistent with the view that Congress intended to preempt the States from getting the very data that they need to make their flexible building codes or State procurement standards work. Counsel referred to trade secrets. That's – that is not a – a point that has been argued before this Court, and it is – it is simply incorrect that there would be any trade secret problems. Manufacturers have not raised that to us. And, you know, again, this isn't part of the record, but there is a California Public Records Act that allows the State to maintain the confidentiality of certain types of information, including proprietary manufacturer data. We have an extensive set of regulations that implements the California Act, and we have kept confidential many types of information, including what counsel is apparently concerned about. Congress also suggested that we can get the information elsewhere. Well, first of all, that's – that's not really correct, and even if it were correct, that – that's not the issue. Congress didn't say, well, we'll – we'll preempt State data collection regulations if – if the State – if it's easy for the States to get it. Congress simply didn't preempt at all. This is a question of law, not a question of how easy is it for us to get the information. But I would like to point out that Federal databases are – are limited, and trade association databases are – are also quite limited. They don't – they don't cover all appliances, they don't cover all models, and they don't cover all manufacturers. Again, this is something that's – that's dealt with in our – in our declarations. I guess I'd like to sum up by – by saying that we believe that the – the expressed words of the statute, the structure of the statute that I talked about before, the existence of the procurement regulation and building standards, exceptions to preemption, so the – all of that with the statute, the legislative history that refers to the burdens of testing, labeling, and efficiency standards, and the unrefuted FTC interpretation all demonstrate that we're – we're far short of clearing the hurdle of a clear and manifest congressional intent to preempt. Thank you. Thank you, counsel. The case just heard will be submitted. I want to thank both counsel for your arguments and your briefs. They've been very helpful in analyzing this interesting and somewhat difficult problem. With that, we'll proceed to the last case on the oral argument.
judges: B. Fletcher, Noonan, Thomas